**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA ex rel. JOE BLYN, DONALD LITTLE and KUROSH MOTAGHED,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiffs,** | |
| **vs.** | |
| **TRIUMPH GROUP, INC., TRIUMPH GEAR SYSTEMS, INC., JEFF FRISBY and CARLA BOWMAN,** | **Case No.  2:12CV922 DAK** |
| **Defendants.** | |

This matter is before the court on Defendants Triumph Gear Systems, Inc. ("TGS") and Triumph Group, Inc.'s ("Triumph") Motion to Dismiss for Failure to State a Claim and on their Motion to Strike or Dismiss the "First Substantive Amended Complaint."  A hearing on the motions was held on July 29, 2015.   At the hearing, the qui tam Relators were represented by Edward A. McConwell and Donald E. Little.  Defendants TGS and Triumph (collectively, "Defendants") were represented by Douglas W. Baruch, Aaron T. Tucker, and Jason D. Boren. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the matter under advisement, the court has further considered the law and facts relating to this motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## I.  PROCEDURAL HISTORY

This is a False Claims Act ("FCA") case concerning allegedly nonconforming gears manufactured by TGS for use by the United States on its civilian and military aircraft.   Triumph is the parent company of TGS.  The Complaint was filed on October 1, 2012 by attorney Donald E. Little on behalf of qui tam relator, Joe Blyn.   On July 25, 2013, an Amended Complaint was filed, removing Joe Blyn as the relator and adding as relators Donald E. Little and Kurosh Motaghed (the "Relators").[1]  Mr. Little had been a lawyer for TGS's predecessor company (Rolls Royce North America), and was involved in the process of selling Rolls-Royce Gear Systems to the Triumph Group.  Mr. Motaghed also worked for Rolls Royce and subsequently for TGS as the Director of Information Technology.

On September 3, 2014, the United States filed its Notice of Election to Decline

---

[1]  In their Reply Memorandum in Support of their Motion to Strike (*see* Docket No. 43), Defendants contend that the current Relators do not have standing to bring this action because Mr. Blyn–the original relator–must have made the initial disclosure to the government and therefore is the only individual who could have standing to proceed with this qui tam suit after the government elected not to intervene.  *See* 31 U.S.C. § 3730(c)(3).  Defendants point out, however, that the original Complaint was never unsealed, and thus they do not know the specific contents of the original Complaint and how it may differ from the Amended Complaint. Nevertheless, Defendants argue that the Relators have provided no basis upon which Mr. Blyn could simply assign his standing to them.

While the court declines to dismiss the action on this basis at the present time, the court instructs the Relators to thoroughly consider this issue, among the other issues discussed in this decision, in analyzing whether they have a good faith basis to file a Third Amended Complaint.  *See* FRCP 11.  In addition, given the substitution of Relators almost two years after the Complaint was originally filed, both the original Complaint and the Amended Complaint should have been unsealed when the United States elected not to intervene.   Accordingly, the court will Order that the original Complaint be unsealed when this decision is entered.

Intervention, and the Amended Complaint was unsealed on the same day.   Soon after the case

was unsealed, Defendants filed their first Motion to Dismiss, arguing that the Amended

Complaint did not meet either the notice pleading standard under Rule 8(a) of the Federal

Rules of Civil Procedure ("FRCP") or the heightened pleading requirements of FRCP 9(b) that

are applicable to False Claims Act ("FCA") claims.   Therefore, they moved to dismiss under

FRCP 12(b)(6).

   Instead of filing a response to Defendants' motion and without seeking leave of court or

obtaining a stipulation from Defendants, on January 26, 2015, Relators filed a "First

Substantive Amended Complaint," which will hereinafter be referred to as the "Second

Amended Complaint."  In response to Relators' improperly filed Second Amended Complaint,

Defendants filed a Motion to Strike or Dismiss the Second Amended Complaint.  While

Defendants are correct that the filing of the Second Amended Complaint was improper, the

court will nevertheless consider the Second Amended Complaint in deciding whether to

dismiss this action for failure to state a claim.

   In their second Motion to Dismiss, Defendants argue that the Second Amended

Complaint still does not meet either the notice pleading standard under FRCP 8(a) or the

heightened pleading requirements of FRCP 9(b).  Specifically, Defendants contend that Relators

have again failed to identify (1) a single false claim that was allegedly submitted to the

government, (2) what allegedly was false about the unspecified claims, or (3) when the

unspecified claims purportedly were submitted.   Defendants also argue that Relators have

failed to (a) specify any cause of action, (b) reference any FCA provision that Triumph or TGS

3

allegedly violated, (c) identify the elements for any cause of action, or (d) link any of their

disparate and conclusory grievances to any FCA cause of action.  Relators, however, disagree

that their Second Amended Complaint is insufficient.

## II.  DISCUSSION

**A.** *Background*

Relators' basic theory appears to be that, from September 6, 2006 through September

2012, every gear manufactured by TGS was "non-conforming"  Therefore, according to

Relators, "the purchase of each such gear constitutes a violation of the False Claims Act."

Relators apparently believe that every gear sold by TGS is a violation of the FCA because a

"Certificate of Conformance" is signed, which contains language certifying that "[t]hese

materials or parts were produced in conformance with all contractually applicable customer or

government specifications.  The materials used conform to all applicable specifications.

Evidence of conformance is available for examination upon request. All special processes were

performed by a facility and/or by personnel specifically approved or certified."

Relators claim that the gears didn't meet these standards, and "[i]n light of known

deficiencies in its manufacturing process and quality control standards, Triumph Gear sold

gears to and for use by the United States based on false Certificates of Conformance.  The

specific problem, they claim, is that there are two standards that apply to the manufacture of

the gears, and there is no way that the gears can be manufactured to meet both standards.

The drawings applicable to the gears require a consistent case depth from one gear tooth to

the next gear tooth.  Due to a known physical phenomenon, they claim, a consistent case depth cannot be maintained from the root of the gear tooth to the pitch line of the next gear tooth.  They claim that the core problem is not a manufacturing deficiency on the part of TGS, but rather, it is a physical impossibility of meeting the product requirements if the drawings standards are followed because a manufacturer cannot both follow the drawings standards and manufacture a gear that fulfills the contract requirements.  Yet, they argue, TGS certifies that both the drawing standards and the product standards have been satisfied.

**B.  *Analysis***

Despite having the benefit of Defendants' first Motion to Dismiss,[2] which detailed multiple pleading insufficiencies, the court finds that Relators still have not stated the elements necessary to establish a facially plausible claim for relief under FRCP 8(a), and they still have not provided the particulars necessary to satisfy the heightened pleading standards applicable to an FCA fraud claim.   Relators have made many allegations about a variety of issues, but they have failed to connect these allegations to the actual submission of a false claim to the government.  They have simply failed to explain how their allegations are linked to a purported FCA violation.

### 1.  FRCP 8(a)

First, the court recognizes that dismissal is appropriate only if the complaint, viewed in

---

[2] Relators stated at oral argument, however, that they had not reviewed the Motion to Dismiss prior to filing their Second Amended Complaint.

the light most favorable to plaintiff, "lacks enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Conner v. Salina Reg'l Health Ctr.*, 543 F.3d 1211, 1217 (10th Cir. 2008) (internal quotations and citations omitted).   Thus, "[t]o survive a motion to dismiss [under Rule 8(a)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Burnett v. Mortg. Elec. Registration Sys., Inc*., 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 66, 678 (2009)).   Even accepting Relators' non-conclusory allegations as true, they have failed to state a plausible claim.  They have failed to (a) specify any cause of action, (b) reference any FCA provision that Triumph or TGS allegedly violated, (c) identify the elements for any cause of action, or (d) link any of their disparate and conclusory grievances to any FCA cause of action.

### 2. FRCP 9(b)

The Second Amended Complaint also fails under FRCP 9(b).  "In all averments of fraud or mistake the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).   Claims of fraud under the FCA, like all other fraud claims, are subject to this heightened pleading standard. *See United States ex rel.  Lemmon v. Envirocare of Utah, Inc*., 614 F.3d 1163, 1171 (10th Cir. 2010); *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726 (10th Cir. 2006).   "'At a minimum, Rule 9(b) requires that a plaintiff set forth the "who, what, when, where and how" of the alleged fraud[]' and [a plaintiff] must 'set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Sikkenga*,

472 F.3d at 726-27 (citations omitted).   Therefore, "in order to meet the heightened standard of Rule 9(b), Plaintiffs must provide details regarding how the alleged conduct was fraudulent and the content of the fraudulent conduct, beyond mere conclusory allegations." *Id.* (citations omitted)).   Here, the Second Amended Complaint fails to supply any such particulars.

First, the Second Amended Complaint fails to state an FCA claim at the most basic level in that it does not identify a single false claim submitted to the government.   "Liability under the [False Claims Act] requires a false claim -- a 'defendant's presentation of a false or fraudulent claim to the government is a central element of every False Claims Act case.'" *Sikkenga,* 472 F.3d at 727; *United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 997 (9th Cir. 2002) ("It seems to be a fairly obvious notion that a False Claims Act suit ought to require a false claim.").   In this case, it is entirely unclear what the purported false claim is.   The failure to identify with particularity the submission of a false claim to the government requires dismissal of an FCA complaint.   *See, e.g., United States ex rel. Lacy v. New Horizons, Inc.*, No. 08-6248, 2009 WL 3241299, at * 3 (10th Cir.  Oct. 9, 2009)  (unpublished) (affirming dismissal where "[plaintiff] has supplied no specific details concerning any particular false claim for payment submitted . . . to the government"); *United States ex rel. Schwartz v. Coastal Healthcare Grp., Inc.*, No. 99-3105, 2000 WL 1595976, at *6 (10th Cir. Oct. 26, 2000) (unpublished) (affirming dismissal where plaintiff failed to identify "any person, place or time when an actual false claim or other illegal activity occurred"); *United States ex rel. Erickson v. Uintah Special Servs. Dist.*, 395 F. Supp. 2d 1088, 1100 (D. Utah 2005) (dismissing complaint

7

where relators "fail[ed] to allege that [the defendant] submitted a false claim").

In addition, Relators fail to explain what was false about any supposed claim. "[I]n order to meet the heightened standard of Rule 9(b), Plaintiffs must provide details regarding *how* the alleged conduct was fraudulent and the *content* of the fraudulent conduct, beyond mere conclusory allegations." *United States ex rel. Ellsworth*, No. 2:09CV353 DAK, 2011 WL 1871225, at *3 (D. Utah May 16, 2011) (unpublished) (emphasis in original); *see also United States ex rel. Smith v. The Boeing Co.*, No. CIV.A. 05-1073-WEB, 2006 WL 542851, at *4 (D. Kan. Feb. 27, 2006) (unpublished) ("[The] failure to pinpoint the alleged fraud or falsity goes to the heart of Rule 9(b)'s concern that the complaint give proper notice.").

Relators' theory appears to be that TGS made false claims by failing to comply with contractual requirements.  If that is the theory, it is incumbent upon Relators to allege with particularity both (a) the violation of a specific contractual provision and (b) that compliance with that provision was necessary for the government to pay a claim for payment.  *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 564 (6th Cir. 2003) (affirming dismissal of FCA complaint that "fail[ed] failure to identify specific parties, contracts, or fraudulent acts").  Moreover, "[a] false certification is . . . actionable under the FCA only if it leads the government to make a payment which it would not otherwise have made." *Conner*, 543 F.3d at 1219 (affirming dismissal of false certification claim where relator failed to allege that the defendant "submitted a legally fraudulent or false claim, as required by the FCA")*; see also Lemmon,* 614 F.3d at 1169 ("[A] false certification . . . is actionable under the FCA only if it leads the

8

government to make a payment which, absent the falsity, it may not have made."); *United States ex rel. Troxler v. Warren Clinic, Inc.*, No. 11-CV-808-TCK-FHM, 2014 WL 5704884, at *6 (N.D. Okla. Nov. 5, 2014) (unpublished) (dismissing complaint where "[r]elator has not identified any specific contract, statute, or regulation that made compliance with any provision . . . a prerequisite to payment"); *United States ex rel. Dillahunty v. Chromalloy Oklahoma,* No. CIV-08-944-L, 2009 WL 3837294, at *4 (unpublished) (dismissing complaint because it "contains no allegations that payment of the contracts was conditioned on defendants' compliance with the specifications, nor that compliance with the process specifications was 'material to the government's decision to pay.'").  If the government would have paid the claims despite knowing that the contractor has failed to comply with certain regulations, then there is no false claim for purposes of the FCA.  *See e.g.*, *Conner,* 543 F.3d at 1220.

In this case, Relators have not alleged that the government's decision to pay TGS for any unspecified claim was conditioned on the allegedly false Certificates of Conformance from TGS.  This failure is fatal to Relators' FCA claim(s).

Furthermore, in addition to failing to identify a single false claim allegedly submitted to the government, or what allegedly was false about the unspecified claims, Relators have also failed to allege when the unspecified claims purportedly were submitted, or who was allegedly involved in the purported fraud.[3]  Realtors' Second Amended Complaint falls far short of the

---

[3]  Relators identify three TGS employees who supposedly were involved in the shipment of "non-conforming" gears, but they do not identify anyone who purportedly submitted any false claim to the government or identify when such a false claim was made.

requirements of FRCP 9(b) and must be dismissed on that basis as well.

### 3. Statute of Limitations

As Defendants highlight, the failure of the Second Amended Complaint to specify any false claim complicates any statute of limitations analysis, but, from the face of the complaint, a serious question arises as to whether some or all claims are time-barred. *See* 31 U.S.C. § 3731(b) (providing that "[a] civil action under section 3730 may not be brought . . . more than 6 years after the date on which the violation of section 3729 is committed"); *Sikkenga*, 472 F.3d at 725 (applying six-year statute of limitations to FCA suits brought by qui tam relators). At a minimum, any FCA violation prior to October 1, 2006 is time-barred.

### 4. Issues Concerning Various Named Defendants

In addition to the above-mentioned reasons for dismissal, it is unclear why Triumph Group has been named as a Defendant. There is no claim stated against Triumph, and no relief is sought from Triumph. It appears from the Second Amended Complaint that it was named merely because it is the parent company of TGS, which is insufficient to state a claim against it. Accordingly, for the independent reason that no claim is stated specifically against Defendant Triumph, it is dismissed from this action.

The First Amended Complaint named Jeff Frisby and Carla Bowman as individual defendants, but Relators appear to have effectively dropped both individuals as defendants in the Second Amended Complaint. Relators expressly stated that Mr. Frisby was "removed" as a defendant. With respect to Ms. Bowman, Relators have eliminated any reference to her in

both the section of the Second Amended Complaint identifying the "parties" to the suit and

the prayer for relief.  Moreover, there is no evidence in the docket that Carla Bowman has ever

been served.  Thus, these two individual Defendants are dismissed, to the extent they were

intended to be individual Defendants.

### III.  CONCLUSION

Accordingly, for the foregoing reasons, the court HEREBY ORDERS that

(1)     Defendants Triumph Gear Systems and Triumph Group's Motion to Dismiss for
         Failure to State a Claim [Docket No.  30] is DENIED AS MOOT;

(2)     Defendants Triumph Gear Systems and Triumph Group's Motion to Strike or
         Dismiss the "First Substantive Amended Complaint" [Docket No. 40] is GRANTED
         in part and DENIED in part.  The court declines to Strike the "First Substantive
         Amended Complaint," but it hereby DISMISSES the "First Substantive Amended
         Complaint" without prejudice as to all Defendants.

(3)     Relators are granted leave, if appropriate under FRCP 11 after considering the
         issues addressed in this decision, to file a Third Amended Complaint by no later
         than October 23, 2015; and

(4)     The court directs the Clerk of Court to UNSEAL the original Complaint, filed on
         October 1, 2012.

DATED this 22nd day of September, 2015.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge