**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA ex rel. JOE BLYN, DONALD LITTLE, and KUROSH MOTAGHED,** | |
| **Plaintiffs,** | **MEMORANDUM DECISION AND ORDER** |
| **vs.** | |
| **TRIUMPH GROUP, INC.; TRIUMPH GEAR SYSTEMS, INC.; JEFF FRISBY; and CARLA BOWMAN,** | **Case No.  2:12-CV-922-DAK** |
| **Defendants.** | |

This matter is before the court on the Defendant Triumph Gears Systems, Inc.'s (TGS's) Motion to Dismiss the Third Amended Complaint. A hearing on the matter was held on April 6, 2016. At the hearing, Plaintiffs were represented by Edward McConwell and Donald Little. TGS was represented by Douglas Baruch, Aaron Tucker, and Jason Boren. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to the matter. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

This is a False Claims Act ("FCA") case concerning allegedly nonconforming gears manufactured by TGS for use by the United States on its civilian and military aircraft. Triumph Group, Inc. is the parent company of TGS. The Complaint was filed on October 1, 2012 by attorney Donald E. Little on behalf of *qui tam* relator, Joe Blyn. On July 25, 2013, an Amended Complaint was filed, removing Joe Blyn as the relator and adding as relators Donald E. Little

and Kurosh Motaghed (the "Relators"). Mr. Little had been a lawyer for TGS's predecessor company (Rolls Royce North America) and was involved in the process of selling Rolls-Royce Gear Systems to the Triumph Group. Mr. Motaghed also worked for Rolls Royce and subsequently for TGS as the Director of Information Technology.

On September 3, 2014, the United States filed its Notice of Election to Decline Intervention, and the Amended Complaint was unsealed on the same day. Soon after the case was unsealed, Defendants filed their first Motion to Dismiss, arguing that the Amended Complaint did not meet either the notice pleading standard under Federal Rule of Civil Procedure 8(a) ("Rule 8(a)") or the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") that are applicable to FCA claims. Therefore, they moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

Instead of filing a response to Defendants' motion and without seeking leave of court or obtaining a stipulation from Defendants, on January 26, 2015, Relators filed a First Substantive Amended Complaint ("Second Amended Complaint"). In response to Relators' improperly filed Second Amended Complaint, Defendants filed a Motion to Strike or Dismiss the Second Amended Complaint. Even though Defendants correctly argued that the filing of the Second Amended Complaint was improper, the court considered the Second Amended Complaint in deciding whether to dismiss this action for failure to state a claim. Defendants filed a second Motion to Dismiss arguing that the Second Amended Complaint still did not meet either the notice pleading standard under Rule 8(a) or the heightened pleading requirements of Rule 9(b). The court granted Defendants' second Motion to Dismiss without prejudice finding that Relators failed to state a plausible claim under Rule 8(a) because they failed to (a) specify any cause of action, (b) reference any FCA provision that TGS allegedly violated, (c) identify the elements for

2

any cause of action, or (d) link any of their disparate and conclusory grievances to any FCA

cause of action. The court also found that the Second Amended Complaint failed under Rule 9(b)

because it failed (a) to identify a single false claim submitted to the government, (b) to explain

what was false about any supposed claim, (c) to identify the violation of a specific contractual

provision and that compliance with that provision was necessary for the government to pay a

claim for payment, and (d) to allege when the unspecified claims purportedly were submitted or

who was allegedly involved in the purported fraud. The court's order also clarified that any FCA

violation prior to October 1, 2006, is time barred and dismissed Triumph Group, Jeff Frisby, and

Carla Bowman from the action.

 In response to the court's order, Relators submitted a Third Amended Complaint. TGS

filed a Motion to Dismiss claiming that Relators did not cure the issues with the Second

Amended Complaint. Relators responded by attempting to show how each of the issues has been

cured, and TGS submitted a reply.

## DISCUSSION

 TGS moves the court to dismiss the Third Amended Complaint pursuant to Rules 8(a),

9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure. TGS argues that the

Relators have not cured the pleading deficiencies that were present in the dismissed complaints.

TGS also argues that the court lacks jurisdiction over Relators' claims and that Relators lack

standing to pursue this case because of the "first-to-file" bar and other statutory requirements

under the FCA. According to TGS, Relators also focus on events that took place prior to the

October 1, 2006, date even though the court has already determined that date sets the outer limits

of liability based on the FCA's six-year statute of limitations. The court will address each of

TGS's arguments for dismissal.

## THE FALSE CLAIMS ACT FIRST-TO-FILE BAR

TGS moves for the court to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction because Relators have failed to comply with the FCA's first-to-file provision. Relators claim that they were among the original Plaintiffs but that they were initially listed as John Does.

The FCA specifically limits that ability of private parties to bring *qui tam* suits on behalf of the United States. One jurisdictional limitation[1] is the so-called "first-to-file" bar, 31 U.S.C. § 3730(b)(5) (2012), which states, "When a person brings [a *qui tam*] action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." *See also Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 (10th Cir. 2004) (stating that the False Claim Act's first-to-file bar "is a jurisdictional limit on the court's power to hear certain duplicative qui tam suits"). The Tenth Circuit interprets the "intervene" portion of the first-to-file bar strictly to only prohibit intervention under Federal Rule of Civil Procedure 24. *See U.S. ex rel. Precision Co. v. Koch Industries, Inc.*, 31 F.3d 1015, 1017 (10th Cir. 1994) ("Our judgment tells us the statute implies intervention of the types set forth in Rule 24(b)(2), and the addition of parties does not constitute intervention. . . . Because Rule 24(b)(2) existed long before the enactment of § 3720(b)(5), we must presume Congress was aware of the accepted meaning of 'permissive intervention' and intended to employ that meaning when the statute was written.").

The Tenth Circuit has also concluded that "[a] motion to add a party is governed by [Federal Rule of Civil Procedure] 15(a)" and should be considered "a motion to amend." *Frank*

---

[1] Circuit Courts are currently split on whether the first-to-file bar under the False Claims Act is jurisdictional. Although most Circuit Courts, including the Tenth Circuit, treat the bar as jurisdictional, the District of Columbia Circuit has recently held that the first-to-file bar is not jurisdictional. *See U.S. ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 119 (D.C. Cir. 2015) ("The first-to-file bar is not jurisdictional.").

*v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (quoted in *Precision*, 31 F.3d at 1018); *see*

*also U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009)

("Motions to add or substitute parties are considered motions to amend and therefore must

comply with Rule 15(a)."). In terms of amendments that add parties, the Tenth Circuit adheres to

the following philosophy expressed by the Supreme Court: "The Federal Rules reject the

approach that pleading is a game of skill in which one misstep by counsel may be decisive to the

outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on

the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957); *see also Travelers Indem. Co. v. United*

*States ex rel. Construction Specialties Co.*, 382 F.2d 103, 105-06 (10th Cir. 1967). To further this

purpose, the Tenth Circuit seeks to give Rule 15 "full fealty" instead of mere "lip service."

*Travelers*, 382 F.2d at 106.

> The relevant portion of Rule 15 provides:
>
> A party may amend its pleading once as a matter of course within: (A) 21 days
> after serving it, or (B) if the pleading is one to which a responsive pleading is
> required, 21 days after service of a responsive pleading or 21 days after service of
> a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). The annotations to the 2009 amendment to Rule 15 speak of a "right to

amend once as a matter of course" and explain how the amendments to Rule 15 "make three

changes in the time allowed to make one amendment as a matter of course." Fed. R. Civ. Proc.

15(a) advisory committee's note to 2009 amendment. Each of the changes is described in terms

of when the right to amend as a matter of course "terminates." *Id.* In other words, the filing of a

pleading is accompanied by a right to amend once as a matter of course, and that right remains

with the party that filed the pleading until the right is terminated by one of the time limits

described in Rule 15(a)(1). As long as the plaintiff in a case makes a single amendment to a

pleading before the right to amend is terminated by one of the Rule 15(a)(1) time limits, "plaintiffs [are] entitled to the amendment as a matter of right." *Precision*, 31 F.3d at 1019.

In this case, the original Complaint was filed under seal with Mr. Blyn as the sole relator. Before the Complaint was unsealed and before the United States decided whether to intervene, the First Amended Complaint was filed removing Mr. Blyn as a relator and substituting Messrs. Little and Motaghed as relators. The amendment to the Complaint came almost nine months after service on the United States but before service on the Defendants, and the amendment substituted relators instead of merely adding parties. Despite these unique aspects to the amendment in this case, the principles espoused by the Tenth Circuit still lead to the conclusion that the amendment was proper.

Plaintiffs have a right to amend a complaint until "21 days after serving it." Fed. R. Civ. P. 15(a)(1)(A). Although Relators technically served the Complaint on the Government, *see* 31 U.S.C. § 3730 (2012) ("A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to [Rule 4(i)] of the Federal Rules of Civil Procedure."), the service referred to in the Federal Rules of Civil Procedure (including in Rule 15) is service of the Complaint by the plaintiff on the defendant, *see, e.g.,* Fed. R. Civ. P. 4(b) ("If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant. A summons— or a copy of a summons that is addressed to multiple defendants—must be issued for each defendant to be served."). Because Relators had not yet served the Complaint on the Defendants, Relators' right to amend their Complaint once as a matter of course had not yet terminated. Their right to amend included the right to add or substitute parties. Relators exercised their right to

amend while the Complaint was still sealed, so TGS experienced no prejudice from the amendment because it had not yet been served on TGS and discovery had not yet begun.

The parties in this case spent a significant portion of their arguments on the first-to-file bar discussing whether it was appropriate to include John Does as possible relators in the original Complaint and whether Messrs. Little and Motaghed were in fact two of the named John Doe relators. Because the court has concluded that Messrs. Little and Motaghed could be substituted as relators in this action through the plaintiff's right to amend once as a matter of course, the arguments about the suitability of John Doe relators in an FCA case and the identity of two of the possible John Doe relators are irrelevant.

Citing to reasoning in *United States ex rel. Precision Co. v. Koch Industries, Inc.*, TGS also claims that only "related" parties are allowed to be added to an FCA case as relators. *See* 31 F.3d at 1017-1018. TGS fails to recognize that the discussion on related parties in the *Precision* case is in the context of Rule 24(b)(2) intervention and simply aided the court in concluding that "the district court erred in holding the addition of the individual plaintiffs violated § 3730(b)(5)." *Id.* The court did not conclude that only related parties could be added through amending the pleading, which is the situation in this case.

Therefore, the court concludes that the Relators in this FCA case had a right to amend the Complaint to substitute plaintiffs once as a matter of course before the Complaint was unsealed and before the United States decided whether it would intervene in the case.

## STANDING UNDER THE FALSE CLAIMS ACT

According to TGS, this suit should also be dismissed because Relators lack standing for two major reasons. First, section 3730(c)(3) provides that, "[i]f the Government elects not to proceed with [a *qui tam*] action, the person who *initiated* the action shall have the right to

conduct the action." 31 U.S.C. § 3730(c)(3) (2012) (emphasis added). TGS argues that the statute limits standing in this case to Mr. Blyn. Second, section 3730(b)(2) requires "[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possesses" to be served on the government. 31 U.S.C. § 3730(b)(2) (2012). TGS argues that, although Mr. Blyn complied with section 3730(b)(2), neither Mr. Little nor Mr. Motaghed complied with that provision, which TGS argues warrants dismissal.

Although TGS focuses on the language in section 3730(c)(3) referring to "the person who initiated the action," another provision in the same statute uses different language to describe the same person. The statute states that the Government is required to "notify the court that it declines to take over the action, in which case *the person bringing the action* shall have the right to conduct the action." 31 U.S.C. § 3730(b)(4)(B) (2012) (emphasis added).  Referring to this and other language in the FCA statute, the Tenth Circuit has clarified that, "[a]lthough written in the singular, there is nothing within the text of the statute suggesting the remedies it provides are limited to only one plaintiff. At least, there is no direct provision creating that limitation." *Precision*, 31 F.3d at 1018. Similarly, there is nothing in the text of the statute suggesting only the first named person can have the right to conduct an FCA action. Taken together, these provisions and interpretations suggest that the statute is referring to the named relator or relators in the operative complaint. Therefore, the court concludes that "the person bringing the action" and "the person who initiated the action" in the FCA statute refer to the properly named relator or relators in the operative complaint.

As discussed above, Relators properly amended the original Complaint to substitute Messrs. Little and Motaghed for Mr. Blyn as relators before the Government decided whether to intervene and before the Complaint was unsealed and served on TGS. Because the amendment

was proper, Messrs. Little and Motaghed are the named relators on the operative complaint in this case. Therefore, they have standing to conduct this action.

In terms of whether Relators complied with the required service of all material evidence and information on the government, the court notes that, although the identities of the relators changed after the Complaint was amended, the substance of the allegations remained the same. Therefore, the government still likely had "substantially all material evidence and information" that Relators possessed and that the Government needed to make an informed decision about whether to intervene. The court concludes that, because the purpose of the statutory provision was still being met, the substitution of relators did not affect Relators' standing in this case.

Accordingly, the court concludes that Messrs. Little and Motaghed have standing to conduct this action.

## THE FALSE CLAIMS ACT STATUTE OF LIMITATIONS

In a previous order in this case, the court clarified that the FCA's six-year statute of limitations, 31 U.S.C. § 3731(b)(1) (2012), at a minimum, bars any claims based on purported violations occurring before October 1, 2006. TGS argues that the vast majority of the Third Amended Complaint's allegations relate to events that predated October 1, 2006, and only conclusory speculation connects these events to issues that may have occurred thereafter. Therefore, TGS argues that Relators have failed to connect any of these allegations to a timely FCA claim.

TGS is correct that any claims for payment from the United States submitted by TGS before October 1, 2006, are outside the statute of limitations. Courts have generally been hesitant to apply the concept of "continuing violation" that arises in employment discrimination law contexts to FCA claims. *See, e.g., United States ex rel. Wynne v. Blue Cross and Blue Shield of*

9

*Kan., Inc.,* No. 05–4035, 2006 WL 1064108, at *9 (D. Kan. Apr. 21, 2006) (finding "no support

for plaintiff's contention that a 'continuing violation' theory applies to FCA claims"); *Pakter v.

N.Y.C. Dep't of Educ.*, No. 08-CV-7673, 2010 WL 1141128, at *6 (S.D.N.Y. Mar. 22, 2010)

(finding that the "continuing violation doctrine" does not bring "discrete acts that occurred

[outside the statute of limitations]" within the limitations period). In the FCA context, each claim

for payment is a discrete event that independently does or does not fall within the statute of

limitations. *See Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 305 (S.D.N.Y. 2014) ("[E]ven if the

continuing-violation doctrine applied to Plaintiff's FCA retaliation claim, that claim is untimely

with respect to all of the events the Complaint alleges occurred before [the statute of limitation

bar]."). This is in contrast to claims, such as allegations of a hostile work environment, in which

several connected events together constitute a single claim. *See Nat'l R.R. Passenger Corp. v.

Morgan*, 536 U.S. 101, 117 (2002) ("A hostile work environment claim is composed of a series

of separate acts that collectively constitute one 'unlawful employment practice.'").

    Even though claims for payment before October 1, 2006, are outside of the statute of

limitations, and, therefore, Relators cannot recover for allegations based on those claims, conduct

that occurred before October 1, 2006, may still be relevant to allegations of false claims for

payment that occurred after October 1, 2006, as background evidence. *See id.* at 113 ("Nor does

the statute bar an employee from using prior acts as background evidence to support a timely

claim."). If the pre-October 1, 2006, conduct helps to establish a scheme for false claims for

payment from the United States, then the conduct may still be included and considered in the

pleading as background information. Therefore, the court will still consider pre-October 1, 2006,

conduct described in the pleading to the extent that it provides background for the alleged

scheme of presenting false claims for payment to the United States after October 1, 2006.

However, the court will not consider allegedly false claims for payment before October 1, 2006, in determining whether Relators have stated a claim upon which relief can be granted.

### FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Because "[r]ule 8(a)'s mandate, that plaintiffs provide a 'short and plain statement of the claim showing that the pleader is entitled to relief,' has been incorporated into both the 9(b) and 12(b)(6) inquiries," *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010) (citations omitted), the court will not separately analyze whether Relator's Third Amended Complaint meets the requirements of Rule 8(a). Instead, the court will consider whether those requirements were met as it analyzes the Third Amended Complaint under Rules 12(b)(6) and 9(b).

On a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and views them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss an FCA claim based on express false certifications, plaintiffs must sufficiently allege (1) that defendants "knowingly submitted legally false requests for payment to the government," (2) "that the government paid the requests," (3) that "the requests contained a false statement," and (4) "that the statement was material to the government's decision to pay." *Lemmon*, 614 F.3d at 1170. "[A]n express-false-certification claim can arise from any false statement that relates to a claim" and does not require "certification of compliance with a *particular* contractual term." *Id.* at 1171 (internal quotations and citations omitted). In terms of materiality, "materiality does not require a plaintiff to show

11

conclusively that, were it aware of the falsity, the government would not have paid. Rather, it requires only a showing that the government *may* not have paid." *Id.* at 1170.

In this case, Relators allege that each of TGS's contracts referenced in the Third Amended Complaint contain Federal Acquisition Regulations (FAR) provision 52.246-2. By its terms, FAR 52.246-2 requires TGS to "provide and maintain an inspection system acceptable to the Government" and to "tender to the Government for acceptance only supplies that have been inspected in accordance with the inspection system and have been found by [TGS] to be in conformity with contract requirements." FAR 52.246-2(b) (2015). The same provision provides that, if the government discovers and rejects nonconforming supplies from TGS, the government can require TGS to remove, replace, or correct the supplies, or the government can terminate the contract with TGS. FAR 52.246-2(h) (2015).

To certify compliance with the inspection requirements in the FAR, Relators allege that TGS submits Certificates of Conformance with products it sends to the government. The Certificates of Conformance expressly state that TGS has inspected its products and certifies that the products meet the government's specifications. Specifically, the Certificates of Conformance state, "These materials or parts were produced in conformance with all contractually applicable customer or government specifications." Relators allege that TGS submits Certificates of Conformance to the government that falsely claim that TGS has inspected its products and ensured that the products meet the government's specifications when, in reality, TGS has not performed the inspections and the products do not meet the specifications. Relators allege that, due to limitations with the gear-hardening process and the failure of TGS to use monitoring and testing software, TGS is incapable of ensuring that its products meet the required specifications. Despite not being able to ensure the products meet the specifications, Relators allege that TGS

"hot stamps" the Certificates of Conformance without completing the required inspections. Relators further argue that TGS officials at the highest levels, including TGS's president, are aware of and require this practice of hot stamping Certificates of Conformance.

Taking Relators' allegations as true, as the court must on a motion to dismiss, the court concludes that TGS has sufficiently stated a claim for relief that is plausible on its face. Relators allege that TGS submitted false Certificates of Conformance to the government with its products, that the government paid for those products, that the Certificates of Conformance contained the false statements that inspections had been performed and that the products met specifications, and that the contractual language "explicitly state[s] that if [TGS] fails to live up to . . . its contractual obligations [to perform inspections on its products and ensure the products meet the government's specifications] the government might refuse or reduce payment." *Lemmon*, 614 F.3d at 1170. Therefore, the court concludes that Relators have stated a claim for relief that is plausible on its face.

## FAILURE TO PLEAD FRAUD WITH PARTICULARITY

Because "a false or fraudulent claim for payment" is an element of an FCA claim, 31 U.S.C. § 3729(a) (2012), Federal Rule of Civil Procedure 9(b)'s "heightened pleading requirements apply to actions under the FCA," *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726 (10th Cir. 2006). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based" and "to give adequate notice to an adverse party and enable that party to prepare a responsive pleading." *Lemmon*, 614 F.3d at 1172 (citations omitted). Although "pre-*Twombly* cases required plaintiffs pursuing claims under the FCA to

plead the who, what, when, where, and how of the alleged claim," the current standard is that "claims under the FCA need only show the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme." *Id.* (internal quotation marks and citations omitted). Even though Rule 9(b) heightens the standard for pleading in FCA cases, "the precise details of individual claims are not, as a categorical rule, an indispensable requirement of a viable [FCA] complaint." *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 126 (D.C. Cir. 2015).

Although portions of the Third Amended Complaint are difficult to understand, Relators have provided sufficient information in short and plain statements to meet the requirements of Rules 8(a) and 9(b). Because Relators are alleging that TGS participated in a fraudulent scheme, Relators are not required to provide precise details about individual claims. Relators are only required to show specifics of the fraudulent scheme and provide an adequate basis for the court to reasonably infer that false claims for payment were submitted to the government.

According to the Third Amended Complaint, TGS acted under the direction of its president to falsely certify on Certificates of Conformance that its products were inspected and met government specifications when the products were neither inspected nor met specifications. Relators refer to this false certification as "hot stamping" the Certificates of Conformance. Specifically, Relators allege that TGS produced gears based on legacy drawings, which had tolerances that were physically impossible to meet due to a known phenomenon in the case depth hardening process. Despite not being able to meet the contract-required specifications, TGS still sold the gears to the government with Certificates of Conformance that stated that the gears met all contract-required specifications. Relators allege that the government relied on the information in the Certificates of Conformance when making the decision to pay for the gears.

After the tolerances on the drawings were relaxed through an engineering change order, Relators allege that the new process required very careful monitoring of the manufacturing process for heat-hardened gears and very careful testing, which could only be performed using a computer system designed to monitor every phase and detail of the manufacturing process. Although TGS installed and began to use a computer system called Factory Net to monitor the manufacturing process, Carla Bowman, President of TGS, led efforts to bypass portions of the Factory Net monitoring and eventually, on September 8, 2006, ordered Relator Motaghed to completely turn off and remove tracking by the computer system after it exposed deviations from the standards related to heat treatment and testing of gears. Once the computer system was removed, Relators allege that TGS lacked the ability to perform the inspections required by the engineering change order and returned to falsely certifying to the government that its products had been inspected and met specifications. Relators further allege that the government relied on these certifications to determine whether to pay for the gears.

Based on those specific allegations, Relators allege that whether TGS is relying on the legacy drawings, in which case their process is not capable of meeting specifications, or TGS is using the specifications approved under the engineering change order, in which case TGS is not capable of performing the required monitoring and testing, TGS is falsely certifying that it is performing the required inspections and that its products are meeting specifications. Therefore, Relators allege that TGS sent gears to the government with false Certificates of Conformance from at least 2006 to 2011. If the specifics of the scheme described above are true, which the court must assume on a motion to dismiss, then the court can reasonably infer that false claims for payment were submitted to the government as part of that scheme.

The court concludes that Relators have afforded TGS with adequate fair notice of its claims and the factual ground upon which they are based to enable TGS to prepare a responsive pleading. Therefore, Relators have pleaded their claims with sufficient particularity to meet the purpose of Rule 9(b) and to survive TGS's Motion to Dismiss the Third Amended Complaint.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that TGS's Motion to Dismiss the Third Amended Complaint is DENIED.

DATED this 26th day of April, 2016.

BY THE COURT:

DALE A. KIMBALL
United States District Judge